LANSDALE's Ex'x. *vs.* GHEQUIERE.

APPEAL from a decree of the Court of Chancery. The bill filed on the 1st of August 1810, stated that *R. Ratien* and *N. Konecke*, partners in common in *Baltimore*, finding themselves, from considerable losses, unable to meet their engagements, assembled their creditors, and offered to sell to them, at stipulated prices, considerable property, both real and personal, in full satisfaction of their debts. The creditors, among whom was *T. Lansdale*, the testator of the appellant, acceded to the proposal, and appointed *A. Moncrieff*, *G. Repold* and the appellee, trustees on their behalf, to receive and dispose of the property, to whom *Ratien* and *Konecke* accordingly, on the 31st of December 1795, executed an agreement, stipulating the sale of their property on the above terms. A part of this property consisted of a lot, wharf and warehouse, on *Fell's Point*, estimated in the arrangement at $14,000. *Ratien* and *Konecke* were authorised to sell several pieces of the property assigned to their creditors, and among them this wharf property, at a higher price than the stipulated amount, if they could. They contracted with *T. Lansdale*, the testator, to sell him this wharf property for $14,000, payable in 6, 12 and 18 months, from which was to be deducted any dividends to which *Lansdale*, as a creditor of *Ratien* and *Konecke* might be entitled. This sale was affirmed by the trustees. *Ratien* and *Konecke* had on the 3d of September 1793, bought this property from *R. B. Latimer*, the agent of the state, it having been confiscated, and held his bond for the conveyance, which had not, however, been made, although they had paid the whole purchase money. The contract with *Lansdale* was verbal, but he received at the time an assignment of the bond of conveyance, (upon which he afterwards, on the 17th of December 1796, obtained a deed from the chancellor, who acted for and on behalf of the state,) and possession of the property, and held it until the 16th of February 1799, when he sold it to *W. Bruff*, *D. Chambers* and *B. Baker*, jointly, for $11,000, payable $4,000 in 6 months, $2,000 in 12 months, $2,000 in 18 months, $2,000 in 24 months, and $1,000 in 30 months, with interest. On the 30th September 1796, and the 1st of March 1803, *Lansdale* became entitled to dividends from the proceeds of *Ratien* and *Konecke's* property, to the amount, for the first dividend, of $4,666 67, and for the other $1,425 47, which sums were credited to him on account of the purchase of the property. No other payments were made by him, nor by his executrix since his death. *Bruff*, *Chambers* and *Baker*, paid to *Lansdale*, on account of their purchase from him, various sums of money, which left due on the 14th of April 1802, including interest, only the balance of $3,950 60. If the above balance be paid to the trustees of *Ratien* and *Konecke*, there will then remain a balance due from the estate of *Lans-*

R and K being unable to meet their engagements, assembled their creditors, and offered to sell to them, at stipulated prices, considerable property, both real and personal, in satisfaction of their debts, to which their creditors assented, and A, R and G, were appointed trustees to make sale of the property, and R and K conveyed it to them on the above terms. A part of the property R and K were authorised to sell, and they did contract to sell to T L, one of the creditors, such part, which sale was confirmed by the trustees, and a deed executed the efor to T L. On a bill filed by the trustees against the executrix of T L, to recover the purchase money, or a sale of the property, &c, they claiming to have a lien on it. *Quere* whether or not R is a competent witness?

Will the acknowledgment of the agent of an execution trix take a case out of the act of limitations? *Quere.*

Will the following expressions in a will revive a debt due from the testator, which was barred by the act of limitations, viz. "When all my just debts and funeral expenses are paid, I devise," &c.? *Quere.*

1817.

Lansdale
v⸴
Ghequiere

*dale* to the trustees on the 1st of March 1803, of $7,063 77, with interest from that date. The bill seeks to have the whole balance paid by the executrix of *Lansdale*, or that the property be sold to pay it, claiming to have a lien on it. *Bruff*, *Chambers* and *Baker*, were ignorant of the claim of the trustees when they purchased and paid part of the purchase money. *T. Lansdale* died in January 1803, having made a will, and devised his property in certain proportions to his wife *Cornelia*, the executrix, and his five children, to wit, *W. M. Lansdale*, *Violetta Lansdale*, *Cornelia*, who intermarried with *P. I. Thomas*, *Eliza*, who intermarried with *J. F. Cox*, and *P. Lansdale*. The will begins, "When all my just debts and funeral expenses are paid, I devise and bequeath as follow," &c. and then proceeds to dispose of his estate. The bill alleges that *W. M. Lansdale* was the agent of the executrix in settling the estate of the testator, and he frequently and fully, within two years before the filing of the bill, admitted the claim, and promised adjustment and settlement, and gave an order on *Bruff* and *Chambers* for a part of it. *Cornelia*, the widow and executrix, and *Violetta* and *Philip*, resided at the time of filing the bill in the District of *Columbia*, and *Eliza* with her husband *J. F. Cox* in *New York*. *B Baker* and *A. Moncrieff*, died before the filing of the bill, and *G. Repold* and *W. Bruff* died since. The bill was filed by *Repold* and *Ghequiere*, as surviving trustees, against the executrix, and heirs and representatives of *T. Lansdale*, and also against *Bruff* and *Chambers*. *Chambers*, *W. M. Lansdale*, *P. J. Thomas* and wife, and *C Lansdale* and *P. Lansdale*, appeared and answered the bill. They do not deny or confess the allegations in the bill, but profess ignorance, and leave the complainants to establish their case by proof. The answer of *W. M. Lansdale*, which by consent was also to be taken as the answer of the executrix and of *P. Lansdale*, concludes thus: "He therefore relies on length of time as a bar to any relief which the complainants might otherwise have had, and claims the benefit thereof at the trial." With respect to the nonresident defendants, *V. Lansdale* and *J. F. Cox* and wife, who did not appear or answer, the bill was taken *pro confesso*. The allegations of the bill were fully supported by the proof taken under the commission issued in the cause. One of the witnesses examined was *R Ratien*. *James P. Boyd*, Esquire, another witness, proved that *W. M. Lansdale*, as the agent of his mother, frequently promised the witness, as the complainant's counsel, to settle the claim, and that the only difficulty was to ascertain the balance due.

The auditor stated an account by the order of the chancellor, to which these exceptions were taken. 1. That the claim of the estate of *T. Lansdale* against *Chambers* cannot be adjusted in this court. 2. That there is no legal and competent proof of the price at which *T. Lansdale* bought the property, the testimony of *R. Ratien* being in-

admissible on the ground of interest. 3. That the evidence afforded by the deed of the chancellor to *Lansdale* of the payment of the purchase money, is disregarded. 4. Because the dividend, to which *Lansdale* was entitled, of *Ratien* and *Konecke's* property, is not legally ascertained, it being done by the complainants and *Ratien.*

KILTY, Chancellor, (July Term 1815.) The difficulties attending this case have arisen from the careless manner in which the sale was made to *T. Lansdale* by the mere assignment of the bond of conveyance from the state's agent, (to save expense as is alleged in the bill) without any written agreement; and the bond of conveyance is not among the proceedings. As the decree will be in the first place against the executrix, it is necessary to remark on the answer of *W. M Lansdale*, which by agreement is to be taken for her answer also. This is not the usual way of taking an answer, but as it is agreed to by the parties, it is presumed that no exception will be taken to it. The chancellor has considered the objections to the competency of the testimony of *Ratien*, and is of opinion that they are not supported by what appears. There is no proceeding against *Ratien* and *Konecke* under any insolvent law, but they made the agreement, which is exhibited and proved, with the trustees appointed by the creditors. By this agreement they made an absolute sale, and the trustees purchased the property in question, and *Ratien* and *Konecke* were thereby released from debts to that amount, whatever might arise to the trustees for the property. By the agreement *Ratien* and *Konecke* were to sell the wharf, &c. for the trustees, provided more than the $14,000 could be obtained. They sold it for only that sum, but the trustees have thought proper to affirm their act,, and it does not appear that they are interested in the event of this suit. The answer admits the sale in some degree, but does not admit the price.

As to the plea of limitations or the insisting on it in the answer, it is to be observed, that at law the least acknowledgment takes the demand out of the statute or act, and by a parity of reasoning. there seems to be a sufficient acknowledgment in the answer to have that effect. The trust created by the will is also relied on. Nothwithstanding the reversal of the decree in the case of *Blakeway vs. The Earl of Stafford*, 2 P. Wms. 373, the chancellor is of opinion that the doctrine recognized in *Precedents in Chancery*, and other authorities, as to the trust created by a charge on the estate for payment of debts, and their being thereby taken out of the statute of limitations, is not overruled or changed. That such charge may be made without express words, as in the case of *King vs. King & Ennis*, 3 P. Wms 358, in which the devise was "that after all the testator's debts paid, the rest and residue of his real and personal estate should go to his son;" and that although the cases generally speak of charges on the real es-

1817.

Lansdale
vs.
Chequiere

tate, a devise of the personal estate, either express or implied, would have the same effect; and would not be merely void, as suggested in the note in the case of *Jones vs. Strafford*, 3 *P. Wms.* 89, but would form rather a stronger ground.

Although the property purchased is clearly liable to the sum remaining due from *Chambers*, and probably for the whole of the balance due to the surviving trustee, it seems to be the most proper course to decree the payment in the first place from the personal assets of *T. Lansdale*, leaving his representatives after the payment, to recover what is due from *Chambers*—More especially from the letters of *W. M. Lansdale* exhibited, and his order on *Bruff* and *Chambers* to pay the balance due from them towards the present claim, by which it appears that *T. Lansdale* had received £3159 1 3 for the warehouse in question. The prayer of the bill also is that the personal estate of *T. Lansdale* should be first resorted to, and on failure thereof his real estate, and particularly the warehouse sold, on which a lien is claimed. The answer admits a sufficiency of assets, and the auditor's report has ascertained the amount. Exceptions have been filed to that report, which have been considered on the final hearing, and are adjudged insufficient. In regard to the exception as to the amount of the dividends of *T. Lansdale* as a creditor of *Ratien* and *Konecke*. it is to be remarked, that it was incumbent on the defendants to show the amount of them. *Decreed*, that the defendant, *C. Lansdale*, executrix of *T. Lansdale*, pay to the complainant, or bring in, &c. the sum of $3950 60 with interest thereon from the 14th of April, 1802; and also the sum of $7063 77, with interest thereon from the 1st of March 1803, and costs. From this decree the defendant, *C. Lansdale*, appealed to this court.

The cause was argued before CHASE. Ch. J. and BUCHANAN, EARLE, JOHNSON, MARTIN and DORSEY, J.

*Magruder* and *Stephen*, for the Appellant. 1. The *first* question is, whether this court ought to consider the acquiescence in this case a presumptive satisfaction? In *Sturt vs. Mellish*, 2 *Atk.* 610, Lord *Hardwicke* considered an acquiescence of 14 years sufficient for that purpose. In *England* the time of limitation is six years, in this state it is three years. By analogy the ground to presume satisfaction is much stronger in this case, than it was in the case referred to.

2. The *second* question is, whether this debt can be revived by the supposed trust contained in the will? In *Lacon vs. Briggs*, 3 *Atk.* 105, Lord *Hardwicke* said "there must be a direct admission of a debt to take it out of the statute of limitations." It seems to be the doctrine of a court of equity that a *trust* shall only take a debt out of the operation of the act of limitations, where the proof of the debt is *clear* and *unquestionable*, not *where an account is to be taken*. At law limitations is a com-

plete bar. The only ground upon which a trust in equity will take the case out of the operation of the act of limitations, is that the debt is due in *equity* and *conscience*. A debt can only be due in *conscience* where the proof is *clear* and *unquestionable*. If the debt be *doubtful* it cannot be *conscientious*. *Lewis vs. Bacon*, 3 *Hen. & Munf.* 89. *Smith vs. Porter*, 1 *Binny's Rep.* 209.

8. *Ratien* is not a competent witness in this case.

*Winder* and *Moale*, for the Appellee. The questions are, 1. Whether the appellee has stated and proved a case which entitles him to the relief prayed?

2. Whether if his case in point of fact and law be sufficient it is not barred by limitations?

1. Under the *first* question the competency of *Ratien* as a witness will be involved. He can be incompetent *only* upon the ground of interest. He must either *gain* or *lose* by the event of this suit. He cannot gain, because he hath parted with all his right and estate in the property. It was an absolute sale to the trustees, unconditional, without any residuary interest or claim or trust for his benefit.

2. The acknowledgment by *W. M. Lansdale*, one of the devisees and the agent of the executrix, takes the claim out of the act of limitations, and rebuts all presumption of payment from length of time. They referred to *Burt vs. Palmer*, 5 *Esp. Rep.* 145. *Matthews vs. Haydon*, 2 *Esp. Rep.* 529, and the case of *Palethorp vs. Furnish*, there cited. 4 *Bac. Ab.* tit *Limitation of Actions*, (E 8) 484, and the cases there referred to.

3. By the will of *T. Lansdale* a trust was created for the payment of his debts. The will directs "and *when* my just debts and funeral charges are paid, I give and devise," &c. These words raise a trust for the payment of debts. This devise charges the real estate with the payment of all debts due from the testator, and creates a trust to be executed by his executrix for that purpose, and his creditors are the *cestui que trusts*. *Trott vs. Vernon*, 2 *Vern.* 708. S. C. *Prec. in Chan.* 430, *Bowdler vs. Smith*, *Prec. in Chan.* 264. *Newman vs. Johnson*, 1 *Vern.* 45. *Beachcroft vs. Beachcroft*, 2 *Vern.* 690. *Gilb. Eq. Rep.* 111. *Harris vs. Ingledew*, 3 *P. Wms.* 91. *Prec. in Chan.* 37. *Wareham vs. Brown*, 2 *Vern.* 153. *Parker vs. Wilcox*, 8 *Vin. Ab.* 439, *pl.* 25. A trust thus created hath been held to revive a debt barred by the statute of limitations *Anon.* 1 *Salk.* 154. *Andrews vs. Brown*, *Prec. in Chan.* 385. *Gofton vs. Mill*, *Ibid* 9. S. C. 2 *Vern.* 141. *Trueman vs. Fenton*, 2 *Cowp.* 548. *Lacon vs. Briggs*, 3 *Atk.* 107. *Blakeway vs. Strafford*, 2 *P. Wms.* 373. *Jones vs. Strafford*. 3 *P. Wms.* 89, (and *note* 1.) *Oughterloney vs. Powis*, *Ambl.* 231. 4 *Bac. Ab.* 484. 7 *Bac. Ab.* tit. *Uses & Trusts*, 138. *Stackhouse vs. Barnston*, 10 *Ves.* 453.

*Magruder* in reply.                DECREE AFFIRMED.